Before you begin, I hope you were able to accommodate your schedule with the conflict with the other case. Hi, Your Honor. I'm actually substituting in for Mr. Shigerian. I'm Alex Debon. I'm an associate of his. Okay. But you might want to say to Mr. Shigerian it's very difficult for us to accommodate a change in schedule or to ask us to meet at 8 o'clock in the morning when the request comes in on Friday afternoon. I understand, Your Honor. Your Honor, in the present case, plaintiff was terminated nearly six days before she was scheduled to return from lawful and approved medical leave. The defendants below did not meet their burden of establishing their entitlement to judgment as a matter of law. The summary judgment should be reversed for the following reasons. If I could first address the reasonable accommodation claim. It's stated on page 21 of plaintiff's reprieve brief that this circuit, California State law, and the EOC all hold that reinstatement following holding a job open is a form of reasonable accommodation. But, counsel, where was accommodation ever requested in the record? Could you point me to where there was an accommodation requested? Sure, Your Honor. The first request for accommodation was the March 20th, 2009, fax from plaintiff's doctor, which stated that plaintiff could return from work at the end of June without  That's and defendant, Your Honor, though they admit in their, they did not, excuse me, they deny in their opening brief they ever received that. In their motion for summary judgment, they actually admitted they received that fax. That's 378 of the record and 232. Well, let me ask you this. If the doctor said she could return to work without restriction, what would the request of accommodation be? Hold her job open until the end of June and allow her to return to that position. Didn't they retroactively do that? They couldn't retroactively. They didn't have to retroactively do that, Your Honor. Well, they did keep it open for a long time beyond. As far as I can see, there's even a factual dispute as to whether she's ever been fired. Yes, there is, Your Honor. But what's not disputed is on June 1st, 2009, they began to seek a replacement for her plaintiff. At the time, they knew she was going to return at the end of June, though they deny it now. In the motion for summary judgment, they admit that. The doctor's note is just a prediction. I mean, they had kept the job open for a long time. A doctor could say you'll be ready at the beginning of June, and it could be wrong. No, even if that's true, Your Honor, nor is the fact on June 25th and June 26th, she informed the director of HR directly by phone, Mr. Short, she could return to work on July 1st, 2009. There's simply a dispute about whether that conversation ever took place. But for the purposes of summary judgment, we can assume that it did. And on June 24th and June 25th, it was a mere six days before she was scheduled to return. I don't believe it would be reasonable as a matter of law to say they cannot hold her position open six more days at that point. And even, Your Honor, if we were to establish that they needed to reply. So what you're arguing for is they had given her all the leave time that she wanted, and that leave time had expired. And by accommodation, you're simply suggesting that they had to extend the leave time beyond which they were obligated to and which they had done for a considerable period of time, even beyond that which they were obligated to do. That can be a reasonable accommodation under certain circumstances, Your Honor. And in this case, I would say it is. In defendant's own brief, they say it would take three months to train a replacement. Plaintiff disputes that. But when they started a replacer on June 1st, 2009, that was only a month away. I don't believe it's reasonable as a matter of law to say that they would rather train a replacement for three months rather than wait a month for an admittedly exemplary and fully trained employee to return. Even if they could establish, Your Honor, that there was a business need, that they absolutely had to replace her immediately, on page 25 of our replacement brief, we talk about there also can be, under certain circumstances, a duty to reassign a plaintiff if vacant positions are available. And in this case, Your Honor, it's undisputed. Plaintiff applied for two positions after July 2nd, 2009, an accounts receivable clerk and an administrative assistant position. The defendants have not even addressed, let alone established, that she could not have performed those positions. And they haven't stated why she wasn't given them. In this case, Your Honor, the fact that there were those open positions that she could have been reassigned to after they admit she knew she was returned to work could have been in an accommodation as well that failure to do so would be a violation of the law. Well, now, accommodation doesn't mean that the employer has to do everything that the employee would like. It seems to me that the employer did quite a bit that it wasn't required, certainly not required to do by the Family Medical Leave Act. It kept her on, even on your version of the facts, for a sustained period after the statutory leave expires. I think Judge Corman has it right that a doctor's letter or note is no more than a prediction. Why is it unreasonable for the employer to think, you know, this just isn't happening? She isn't coming back at the time that the doctor says she might be ready to come back. Under the circumstances, Your Honor, it could be said to be unreasonable that they'd seek to replace an employer 30 days before she's scheduled. It may only be a prediction, but isn't anything a prediction? And even if we were to say it was reasonable for them to fill her position immediately, she still could have been assigned to vacant positions that they admit were open and were not given to her. But there was no longer a legal requirement at that point to keep her job open. So how could there be a violation of the law if there were no legal requirement at that point to keep her job open? There could be. There's multiple laws working at the same time. Her leave under the CFRE may have expired, but that does not mean in all circumstances leave cannot be extended as a reasonable accommodation under the Fair Housing and Employment Act or the ADA. We addressed that in our brief as well on page 21, that holding a job open, even unpaid, could be under the circumstances reasonable. But that's a whole new set of requirements that would have to be met. There would have to be a disability. There would have to be a showing that despite the disability she could perform the job with reasonable accommodations. None of that is in the record. The record is clear. She suffered from a psychiatric disability. And the June, sorry, the March 20, 2009 letter from the doctor is that even if it is a prediction, it does state she's able to work without restrictions. And defendant hasn't established they refused her position to come, they refused her coming back or reassigning her to another position because they stated she wasn't qualified. The record is clear. She did apply for positions that I would say as seven years an accounting clerk, she could definitely do administrative assistant work or accounts receivable clerk work. And there's no argument from the other side saying why she couldn't get those other positions. I would point out, and we mentioned in our opening brief, Your Honor, the one accommodation they did admit they gave her was they said, well, she can apply for other positions. And as we say on 25, there's been many state and federal courts of hold that simply treating a disabled employee as another job applicant is not a reasonable accommodation under the law, specifically on 1389 of the Spitzer's v. Good Guy's case. In this case, all they simply said was you can apply. That simply treats her like any other job applicant. That's not an accommodation under the law. And more to that point, Your Honor, if I could correct the record, the defendant states with regards to the interactive process, excuse me, the failure to engage in interactive process, that plaintiff broke it down by simply filing the lawsuit. I would say that that misrepresents the record, that when plaintiff applied for two jobs after July 2nd, after defendant admits she knows she can return to work without restrictions, after she's been told to apply and apply for jobs that she's qualified for, not only has she not offered those jobs, but they do not simply respond in any way. That's the point, Your Honor, where the interactive process breaks down. And I would submit that their failure to respond in any way after July 2nd evidences defendant's failure to participate in the interactive process in good faith. So, counsel, traditionally the interactive process is a process during which the employee and employer try to come up with accommodations for a recognized disability. So in this case, what started the interactive process in your view? What started the interactive process I would believe would be the March 20th, that was in a nine-letter saying, hold the job open until June. When that was denied twice, both on March 20th, 2009, then when she called the HR director, that was denied. The alternative to the process, well, could you reassign me to a vacant position? And she initiated that by applying, and they simply did not respond at that point. And I'd say that was the breakdown of the interactive process. And again, there's simply no showing in the record why those other positions weren't given to her or why she wasn't discussed or considered for alternative open positions. Okay. Do you want to save a little time? If there are no more questions, I'll save the remainder of my time for the bubble. Okay. I don't know how to work this. I don't do anything. Okay. Well, there you go. Just watch it. And the time counts down. Thank you. And when it comes to zero and the light turns red, that means you're on our time. Thank you, Your Honor. May it please the Court. I'm Deborah Fisher. I'm with the law firm of Bingham & McCutcheon, and I'm here representing Apelli Medtronic, Inc. I see counsel spent, I guess, all of his time talking about the interactive process and reasonable accommodation. That's what I would like to address, since that's what they spend most of their time in the reply brief addressing. If I have time, I'll address the other claims. We think that with regard to the other claims, that there really are no – we think with regard to all the claims, there are no triable issues of fact, and we are prepared to submit on the briefs if I run out of time, unless the Court does have questions. So please, if the Court has questions on the other claims, I'm sure the Court will let me know. With regard to the issues raised by counsel, I'd like to deal with them as follows. A critical issue here is reasonable accommodation, and I think the Court has already pointed out today that there were no requests for accommodation at the time of the alleged termination. So, counsel, may we assume that you concede that there was a disability? For purposes of this argument, we will, Your Honor. FEHA requires that an employer engage in a timely, good-faith, interactive process in response to a request for a reasonable accommodation, and that's critical, in response to a request. And an employee must initiate that request. If there was a breakdown here, there actually are several issues. There was no request pending at the time of the termination. And if there was any breakdown, the breakdown was the fault of the plaintiff, Ms. Cadian. There was a request for an accommodation early on. There's no dispute that there was a request for intermittent leave back in 2008. There's no dispute that there were no issues with regard to the request from January 2009 through March 2009. All of her CFRA leave was granted, and it was over. Ms. Cadian knew that she was supposed to deal with Medtronic's leave administrator. There's some implication here that she dealt with her supervisor and HR. She was well aware that she was supposed to deal exclusively with the professionals who Medtronic designates as dealing with the leaves. And she even says in her reply brief that she dealt with them exclusively, the leave administrator. And so the conversations that she had with Ms. McGarry and Mr. Short are largely irrelevant. But if you look at those conversations, the conversations she had with Ms. McGarry, she simply told her to go ahead and deal with the leave administrator, and if she was able to return to work, to give us a call when you get closer to it. I think the key issue here is that she can't have it both ways. She's trying to argue that she was both terminated and that Medtronic had some kind of requirement to reassign her. So if she was terminated, there was no, and the district court held very clearly, if she was terminated on June 25th and 26th, as she says, although her testimony related to what Mr. Short said is very vague and unclear. First she says she was terminated, and then she says, well, you'll be terminated after 30 days. But if, assuming she was terminated, there was no pending request for an accommodation. She had asked for an accommodation. She had asked for multiple leaves and had been granted through April. In April, she asked for another leave, and it was granted through May. And she testified that she understood in May, if she needed an extension, she would have to ask for that extension. But the employer takes the position that she was not terminated. We take that position, Your Honor. Okay, so if she was not terminated and she was still an employee, why wouldn't the employer be obligated as an accommodation to hold her job open? Okay. If we'll switch to, since the Court has asked, let's assume she wasn't terminated. That's your position. It is our position. If she was terminated, no accommodations were requested up to the time of termination, and that's what the district court held. If she was not terminated, which we contend, both parties were obligated to engage in the interactive process. What did we have at the time? We had Mr. Short telling the plaintiff, you have to come back, you know, when you're released to return. Well, okay, let's follow the timeline. So let's assume June 25th and 26th doesn't happen, there's no termination. June 30th comes. This is two months after Ms. Cadena was aware that she had to submit paperwork. June 30th comes, and she goes to the leave administrator, as she's been doing for a year, and says, I need another extension. A couple days later, the leave administrator grants the extension. It's retroactive because Ms. Cadena waited so long. So the leave administrator grants the extension until June 12th. The plaintiff admits in her deposition, I knew I needed to ask for another extension if I need an extension beyond June. So on July 2nd, she goes to the leave administrator, and she says, I've been released to return to work. She knows the leave administrator, and she testifies. Is going to talk to the HR guy, tell him she's been released to return to work. What does she do? She doesn't come back to work. She doesn't do anything that she was supposed to do. She's supposed to call and say, I'm coming back to work. She doesn't do that. She's supposed to report back to work. She doesn't do that. She's supposed to follow what Mr. Short told her to do if there was no job. So she reports back to work. If her job is there, she gets it. That's in the June 1st letter. If the job isn't there, they're going to help her find a job. Well, she doesn't come back, so we don't know if there's a job, although we know from what happens later, because once they find out she thinks she's terminated, they say your job is open and available. Let's just assume we don't know. So she doesn't come back to work. We don't know if there's a job available. If there wasn't a job available, we would have helped her look for a job, but she doesn't come back, so we don't help her look for a job. What does she do? Without talking to Medtronic, without talking to Mr. Short, Ms. McGarry, or the leave administrator, goes off and applies for a couple of jobs, but she admits in her deposition she doesn't tell anybody what she's doing. So she does report to work. We don't put her on a leave. We don't look for another job. She secretly a couple of times goes online and looks for a couple of jobs, but doesn't tell anybody anything. So is it the employer's position that the employer was unaware that she applied for jobs in the employer's business? The facts are undisputed that she did not speak with Ken Short. That wasn't my question. My question was, is it your position that the employer was unaware that she applied for those positions within the company? There's no evidence in the record, but that's correct, Your Honor. I mean, there's absolutely no evidence, because she applies. She hears nothing. Let me make sure I understood your answer. There's no evidence in the record that shows that the employer is aware that this happened? Was that your answer? That's correct, Your Honor, as far as I know. Yes, that's correct. And she admits. Where the as far as I know comes from? No, that's correct, Your Honor. That's correct. And Ms. Gideon admits that she doesn't talk to Ken Short again after June 25th, 26th. And she admits she doesn't talk to anybody about those two jobs. So this reassignment issue that the plaintiff talks about today in the reply brief is not relevant to this case. We have a bunch of cases that they cite, the Jensen case, 85 Cal at 4th, the Spitzer case, 80 Cal at 4th, the McAllendon case, 192 Fed 3rd, 1226. These cases are not our case. Why? Because the plaintiff in those cases couldn't go back to their job. The plaintiff in those cases said, I need a new job. In the Spitzer case that they sent a letter to the court on, the plaintiff asked, I think, six times, had back problems, asked six times, I can't do my job. I want a different job. The Jensen case was a bank robbery victim. The victim didn't want to go back to a branch job because they were afraid, so they asked for a non-branch job. That's not this case because there is no evidence that the plaintiff didn't want to go back to her job. In fact, in the doctor certification in April, it was specifically asked of her, can you come back with restrictions? And the answer was no. There was not a single request, not a single request that she made that she wanted to do something other than come back to her job. And, in fact, the undisputed evidence is that she gets released to return to work. So either she's terminated and she asked for not a single accommodation at the end that was not granted up to the termination, or she wasn't terminated and did not follow the process that she was supposed to follow, come back to work. I mean, all she needed to do was come back to work. She can't say, I was terminated and you were required to accommodate me. If she was terminated, we weren't required to do anything after the termination. I don't want to get too deep into the weeds of possible settlement, but this does not seem to me to be a necessary lawsuit. Have you engaged in mediation through our Ninth Circuit mediators? I assume I can answer that. Whether you've done mediation, you can answer. I'm not going to get into what happened in mediation if you were in mediation. We were more than happy to. The plaintiff's counsel did not want to, Your Honor. So there was a request to do it or a suggestion to be done, but declined. Okay. But you offered her, you sent letters to her offering her the opportunity to return to work twice, including in September of 2009. I'm sorry. You offered her the opportunity to return to work as early as September of 2009, which was, you know, within a little more than 60 days of July 1st. Yes, Your Honor. As soon as Medtronic found out about the lawsuit, letters were sent. Letters were ignored. It's in the record that they said your position is open and available within a couple of months of the lawsuit or not even two months of the lawsuit, and there was no response other than the lawyer said it was a clever litigation tactic. So there has been no response to Medtronic's position that plaintiff was not terminated. So I'm dying to know why you haven't fired her. Your Honor, it's an excellent question. This is a strange case. It's an excellent question. I would agree it's a strange case. The legal issues, however, are clear. Medtronic never intended to fire a plaintiff, but here we are dealing with a lawsuit and having to respond legally, and on the record there is just not a single dispute that Medtronic granted every single accommodation requested before and after the fictitious termination. Are you apparently, as of the filing of the brief, you were still paying benefits for her? Are you still doing that? You know, I don't know, Your Honor, because so much time has gone by. I don't know the answer to that. As of the end of summary judgment, yes, Your Honor. Unless the Court has ---- And you agree there's a tribal issue as to whether you fired her or not? Do we believe that there's a tribal issue? Absolutely not, Your Honor, because there is a mountain of evidence that plaintiff has not been terminated. Not only was she immediately told, obviously, after we found out she thought she was terminated, that your job is available, but every single piece of paper shows that she was not terminated. What about this evidence that she apparently was taken up to the company headquarters to remove her belongings, escorted by, I think, a security guard? I don't know how much is in the record, Your Honor. They were trying to replace her position, and it was a space issue. But I can honestly say I'm not sure if that testimony is in the record, so I don't want to mislead the Court. But they were trying to replace her, and I assume at this point did fill that position. But as of September and May, when they offered to put her back in the open position, that position was open to her. And your position today is that she's been fired or not as of today? You don't know? I don't believe that any paperwork has been put in to terminate Ms. Cadian. I think this has become a principled issue with the company at this point, that we have done everything in our power from the moment this lawsuit was filed to now to explain that she wasn't terminated. It's principled at this point. I don't know what that means. Suppose we ruled in your favor that she isn't fired, that we decide this factual dispute in your favor that she hasn't been fired. Where does that leave the case? That's a good question, Your Honor, because I can't speak for the client as to whether that job is open. And it's been two years since we've been briefing, so I don't want to make a representation on behalf of the client. But I'm not aware of any ñ there's no information in the records, certainly, that she's been terminated. As of the date of the summary judgment? That's correct, Your Honor. Okay. Thank you. Thank you very much. Okay. You've saved about three and a half minutes. Yeah. I have just a few points, Your Honor. One, I would ask the court to look at the June 1st letter that Ken Short sent to Plaintiff where he told Plaintiff if she had any questions about her placement, please communicate with me directly. Now counsel turns around and says, well, she was supposed to deal with Hartford, the third-party administrator, but the director of HR did ask Plaintiff to communicate with him directly, and she eventually did. As to why she didn't go back to work, the counsel just ignores the fact that on June 25th Mr. Short stated she was terminated, that it was final, come pack up your things, and that after hours she was escorted by a security guard to remove her belongings. Now where is that in the record, counsel, that she was told she was terminated and she was escorted by a security guard? Where can we find that in the record? It's in her deposition testimony, I believe, on page 6. Was that deposition testimony before the court when the court ruled on the summary judgment motion? Yes, it was, Your Honor. And I would say, Your Honor, the district court found that a reasonable jury could find she was terminated, and the district court did deny the motion for summary judgment based on no termination, and that would be one point where plaintiff did agree with the district court. Right. As I understand it, what the district court did is said she may or may not have been terminated for purpose of summary judgment. I have to assume she has been terminated and then moved on to the rest of the case. The district judge writes, with respect to accommodation, I'm just reading from the district court's order, page 42 of the order, it's 1083 of the ER, and I'm just reading from the district judge, As noted, Cadian has deduced no evidence that Medtronic refused any accommodation she requested. Medtronic granted Cadian's request for intermittent leave on November 3, 2008, full-time leave through March 1, 2009, an extension of leave through April 28, 2009, another extension of leave through May 24, 2009, even though her protected CFRA leave had been exhausted two months earlier, another extension of leave through June 12, 2009, which was requested and granted after her termination, alleged termination, and a final extension of leave through June 30, 2009, which was also requested and granted after the alleged termination. Plaintiff has thus failed to raise triable issue of fact regarding Medtronic's failure to accommodate her disability. Is any statement in that paragraph that I just read wrong? Yes, Your Honor. Which statement or statements? It ignores the June 25th request for accommodation direct to Mr. Short that her position be kept open until June 1st, where she told him, but I'm cleared to come back to work on June 1st, July 1st. Sorry, that's a request for accommodation. Simply keep my position open six more days. Six more days, Your Honor. That seems to be a real accommodation under the law. At least a jury could find one. The second request for accommodation, as I've alluded to, was after July 2nd, the application for other jobs, which they were open and she was qualified for. They try to say they didn't know, but they don't dispute she applied for them. That's a request for accommodation. Okay. Let me ask you this. It's been represented that there was a suggestion of mediation and your client declined to mediate in the Ninth Circuit mediation program. Is that right? Actually, Your Honor, I'm not familiar with that under the record. I would accept counsel's representation. I don't have personal knowledge of that refusal to mediate. I apologize. Okay. So opposing counsel says that when your client applied for the jobs, no one in the company was aware that she had applied for the jobs. Do you agree with that? I would say, Your Honor, I don't see how that could possibly be true. And if it is, it's definitely a triable issue of fact if they're going to take that position. The other thing I would just point out. Let me just follow up on that. Is there anything in the record that reflects that your client notified her liaison at the company that she had applied for the jobs? I don't believe so. Did she tell anyone, I've applied for these two jobs, I'm requesting accommodation by being considered for these jobs? Is there anything in the record to that effect? I don't know if that's exactly, Your Honor, but I would say, Your Honor, the case law is pretty clear. Employers don't have to use magic words to request accommodation. It's a two-way street that employers are supposed to know their duties as well. But how would they be able to know their duties if they didn't know she applied for the jobs? Well, how could they not? Well, there would be a dispute. How could they not know if she did indeed apply, that they certainly received the applications and the requests? Well, that's possible. If the people who were involved in the accommodation process weren't the same people who were screening applications, it would be easily missed that this particular person who's in line for an accommodation had applied for a job. The easiest thing to do would be to let the specific person who's dealing with the accommodation know that you've applied for a job. The point could be well taken, Your Honor, but that, at the very least, presents an issue for a jury to decide. That is one possible reading of the evidence, but it's not as a ---- But what is the evidence? That's what I'm asking. Is there any evidence? It doesn't go to a jury unless there is some evidence in the record one way or the other. Is there any evidence in the record regarding how the process was? How, when she applied for the job, did she just apply? That's all we have in the record is that she applied without any information as to whether or not the employer was aware that she applied. I would believe, Your Honor, that the employer, the employee didn't have any reason to know that people were unaware she had applied. And from the employee's perspective, I would say what more is she supposed to do? But she said, I was told to apply, and I applied, and I didn't receive any response. From her view, it's a request, and it's denied. If the employer wants to say, well, we didn't know about it, that does disclose an issue of triable fact. You have to rely on inferences. A jury could infer from that. They could say, we didn't know it, and a jury could infer, we believe them. But the jury could view the other way, and she said, I applied, that's enough. They knew. A jury could make that inference as well. That would be enough for a jury. What am I missing? Isn't it clear that on July 8th, they retroactively approved her leave for the period from June 12th to June 30th, and she didn't return to work? She did not. Well, Your Honor, that ignores the fact they did approve the leave, but the leave does not mean anything without reinstatement. And that just goes to the issue on July 25th, she was terminated, or at least reasonably believed she was terminated. And that's why she does not go back to work on that issue. And that's why she – but she is applying for other jobs. So her way of trying to come back to work, she had already been told, you can't come back to your present position. There's not a present position for her to return to after July 1st, 2009. The defendant admits that. So her way of trying to come back to work is applying for other positions and getting no response. And just approving the leave in and of itself, I just say that as the EOC made clear, reinstatement is also a part of approving leave. The accommodation is not simply granting leave. That can be part of it, but there's also the accommodation of reinstatement or reassignment. But if she's been – but if her leave has been extended in early July, that certainly tells us that she hasn't been fired as of that date. I would say, Your Honor, that I would still say the district court was correct in believing that being told she was fired and made to pick up her things definitely raises a triable issue of fact whether she's been fired. Okay. Thank you very much. Was she actually made to pick up her things or did she request? No. She was made and went with her sister. And her sister's declaration and her declaration, they both confirm they went after hours with the security guard while the security guard watched her pick up her things and marched her down. That is clear evidence in the record. She was made to pick up her things under a security guard. Right. She was made to pick up her things with a security guard, but who told her she had to pick up her things? Ken Short on July 25th in the conversation. Okay. Thank you. Thank you very much. Thank both sides for their argument. Gideon v. Medtronic is now submitted for decision.
judges: Korman, Fletcher, Rawlinson